UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCM MANAGEMENT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 4255 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| HUDSON INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Believing it was owed money under a surety contract, plaintiff MCM Management Corp. ("MCM") filed in the Circuit Court of Cook County a complaint asserting claims for breach of contract and declaratory judgment. Plaintiff sought damages for defendant's alleged breach of performance and payment bonds and sought a declaration that defendant was liable under the bonds. Defendant Hudson Insurance Company ("Hudson") removed the case to this Court.[1] Defendant has filed a motion for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.      BACKGROUND**

The following facts are undisputed unless otherwise noted.[2]

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.00. [Docket 1 at ¶ 6; Docket 36-1 at 33]. Plaintiff MCM is a citizen of Michigan, its state of incorporation and the location of its principal place of business. [Docket 1 at ¶ 8]. Defendant Hudson is a citizen of Delaware (its state of incorporation) and New York (the location of its principal place of business). [Docket 1 at ¶ 9].

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence

In late 2017, in connection with a demolition project on the south side of Chicago, plaintiff MCM entered an agreement with HRE Crawford, LLC (which is not a party) to provide demolition and removal services. A few months later, on February 26, 2018, MCM entered into a subcontract with Jenkins Environmental, Inc. ("JEI"), under which subcontract JEI agreed to perform all of MCM's work under MCM's contract with HRE Crawford, LLC.

JEI, in turn, entered into sub-subcontracts. First, JEI entered into one sub-subcontract ("First Sub-subcontract") with Marine Technology Solutions, LLC ("MTS") for $609,325.00. Under that First Sub-subcontract, MTS agreed to provide oversight and support services for environmental remediation work. Second, on March 31, 2018, JEI entered into a second sub-subcontract ("Second Sub-subcontract") with MTS for $299,662.00. Under that Second Sub-subcontract, MTS agreed to perform "Remediation Physical Set-up."

Defendant Hudson issued performance and payment bonds for the Second Sub-subcontract. Specifically, defendant issued Performance Bond No. 10072088 (the "Performance Bond") and Payment Bond No. 10072088 (the "Payment Bond"). The Performance Bond and

---

and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). At the summary judgment stage, a party cannot rely on allegations; he or it must put forth evidence. Fed.R.Civ.P. 56(c)(1)(A); *see also Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the 'put up or shut up' moment in a lawsuit,' summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.").

    Where one party supports a fact with admissible evidence (i.e., not complaint allegations) and the other party fails to controvert the fact with citation to admissible evidence (i.e., not complaint allegations), the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. See *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

the Payment Bond bonded only the Second Sub-subcontract, i.e., only the Remediation Physical Set-up. That is why each bond lists the amount as "$299,622.00."

The Performance Bond and the Payment Bond are form contracts by the American Institute of Architects. Each lists MTS as "SUBCONTRACTOR" and as "PRINCIPAL." Each bond lists JEI as Construction Manager and lists defendant as "SURETY." (Performance Bond at 1/Docket 36-1 at 33; Payment Bond at 4/Docket 36-1 at 36). The Performance Bond states, in relevant part:

> 3. If there is no Construction Manager Default, the Surety's obligation under this Bond shall arise after:
>
> > 3.1 The Construction Manager has notified the Subcontractor and the Surety at the address described in Paragraph 10 below that the Construction Manager is considering declaring a Subcontractor Default and has requested and attempted to arrange a conference with the Subcontractor and Surety to be held not later than 10 days after receipt of such notice to discuss methods of performing the Subcontract. If the Construction Manager, the Subcontractor and the Surety agree, the Subcontractor shall be allowed a reasonable time to Perform the Subcontract, but such an agreement shall not waive the Construction Manager's right, if any, to subsequently declare a Subcontractor Default; and
> >
> > 3.2 The Construction Manager has declared a Subcontractor Default and formally terminated the Subcontractor's right to complete the Subcontract. Such Subcontractor Default shall be declared earlier than fifteen days after the Subcontractor and the Surety have received notice as provided in Subparagraph 3.1; and
> >
> > 3.3 The Construction Manager has agreed to pay the Balance of the Subcontract Amount to the Surety in accordance with the terms of the Subcontract or to a Contractor selected to perform the Subcontract in accordance with the terms of the contract with the Construction Manager.
>
> 4. When the Construction Manager has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
>
> > 4.1 Arrange for the Subcontractor, with consent of the Construction Manager, to perform and complete the Subcontract; or

> 4.2 Undertake to perform and complete the Subcontract itself, through its agents or through independent contractors; or
>
> 4.3 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with Reasonable promptness under the circumstances:
>
>> 1. After investigation, determine the amount for which it is liable to the Construction Manager, and, as soon as practicable after the amount is determined, tender payment therefore to the Construction Manager; or
>> 2. Deny liability in whole or in part and notify the Construction Manager citing reasons therefore.
>
> 5 If the Surety does not proceed as provided in paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond ten days after receipt of an additional written notice from the Construction Manager to the Surety demanding that the Surety perform its obligations under this Bond and the Construction Manager shall be entitled to enforce any remedy available to the Construction Manager. If the Surety proceeds as provided in Subparagraph 4.3, and the Construction Manager refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Construction Manager shall be entitled to enforce any remedy available to the Construction Manager.
>
> * * *
>
> 12 Definitions
>
> * * *
>
> 12.3 Subcontractor Default: Failure of the Subcontractor, which has neither been remedied nor waived, to perform or otherwise Comply with the terms of the Subcontract.
>
> 12.4 Construction Manager Default: Failure of the Construction Manager, which has neither been remedied nor waived, to pay the subcontractor as required by the Subcontractor or to perform and complete or comply with the other terms thereof.

(Performance Bond at 1-3/Docket 36-1 at 33-35).

The Payment Bond states, in relevant part:

> 1 The Subcontractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Construction Manager to pay for labor, materials and equipment furnished

> for use in the performance of the Subcontract, which is incorporated herein by reference.
>
> * * *
>
> 4      The Surety shall have no obligation to Claimants under this Bond until:
>
> 4.1  Claimants who are employed by or have a direct contract with the Subcontractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Construction Manager, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.
>
> 4.2  Claimants who do not have a direct contract with the Subcontractor have furnished written notice to the Subcontractor and sent a copy, or notice thereof, to the Construction Manager within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and have sent a written notice to the Surety (at the address described in paragraph 12) and sent a copy, or notice thereof, to the Construction Manager, Stating that a claim is being made under this Bond and enclosing a copy of the previous written notice to the Subcontractor.
>
> * * *
>
> 15    DEFINITIONS
>
> 15.1  Claimant: An individual or entity supplying labor, materials or equipment in the prosecution of the work provided for in the subcontract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Subcontract, architectural and engineering services required for performance of the work of the Subcontractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

(Payment Bond at 5-6/Docket 36-1 at 37-38).

MCM asked to be an additional obligee on the Performance Bond and the Payment Bond. Accordingly, on April 10, 2018, defendant (the surety), MTS (the obligor), and JEI (the original obligee) executed a "Rider Adding Additional Obligee." The Rider states, among other things:

5

> WHEREAS, upon the request of the Principal and Obligee the attached bond is hereby amended to add MCM Management Company, Inc. as an additional obligee.
>
> PROVIDED, HOWEVER, there shall be no liability under this bond to the Obligees, or either of them, unless the said Obligees, or either of them, shall make payments to the Principal strictly in accordance with the terms of the contract as to payments and shall perform all other obligations to be performed under said contract at the time and in the manner therein set forth; all of the acts of one Obligee being binding on the other.

(Rider at 1/Docket 36-1 at 43). Plaintiff MCM, the additional obligee, was not required to sign the Rider. Nor did it sign the Performance Bond or the Payment Bond.

Although the details are not clear from the parties' statements of fact, it is undisputed that MTS failed to perform under the Second Sub-subcontract. It is also undisputed that JEI defaulted. (Plf's Statement of Facts ¶ 10/Docket 46 ¶ 10). It is undisputed that the first notice defendant received (from MCM, JEI or MTS) about problems at the project was on July 31, 2020, when MCM sent a letter demanding payment. Specifically, the letter stated, in relevant part:

> Please be advised that [the undersigned] represents MCM Management Corp. Please accept this letter as MCM Management Corp.'s Notice of Claim on Bond for Bond No. 10072088 ("Bond"). As defined by the enclosed Bond, the Subcontractor Marine Technology Solutions, LLC, defaulted by failing to perform or otherwise comply with the terms of the subcontract, without remedy or waiver. (See Bond, section 12.3). Construction Manager Jenkins Environmental, Inc. defaulted by failing to perform as defined in section 12.4.
> \* \* \*
> Throughout the Project, JEI and MTS repeatedly defaulted by missing deadlines, demanding additional funds from MCM due to negligently underfunding the Project, failing to properly manage and supervise its subcontractors, and negligently failing to perform according to industry standards.
> \* \* \*
> MTS . . . was removed from the Project prior to the completion of the scope of its work which had already been paid by MCM. After removal from the Project, MCM was forced to perform the scope of work at an additional cost of Four Million Dollars ($4,000,000.00) above and beyond of what MCM had already paid for the work to be completed.
> \* \* \*

6

> JEI's and MTS's conduct described herein resulted in MCM having to directly pay certain vendors, contractors, and suppliers on the Project and to hire contractors to complete, remedy and/or perform MTS's scope of work.
>
> * * *
>
> Please be advised that MCM will rely upon the Bond for partial payment of its damages, which far exceed the limits of the Bond. . . . This correspondence is intended to satisfy the notice requirement stated in section 4 of the Payment Bond. This correspondence shall serve as formal written notice of MCM's Claim and/or Notice of Claim on both the Performance and Payment Bonds.

(July 31, 2020, letter at 1-3/Docket 36-1 at 46-48). In October 2020, plaintiff submitted a proof of claim to defendant. Plaintiff has put forth disputed evidence that it incurred costs in the amount of $4,663,959.47 to perform the work MTS was obligated to perform under its contracts with JEI.

Defendant denied the plaintiff's request for payment under the bonds, and plaintiff filed this suit. In Count I, plaintiff seeks a declaration that defendant must make payment to plaintiff under the bonds in the amount of $299,622.00. In Count II, plaintiff asserts that defendant breached the terms of the bonds by failing to make payment in the amount of $299,622.00.

## II.     STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if

sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. DISCUSSION

The parties agree that Illinois law applies. (Plf. Brief at 5/Docket 45 at 5; Def. Brief at 2/Docket 35 at 2). To prevail on a claim for breach of contract under Illinois law, a plaintiff must "establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach." *Spitz v. Proven Winners North Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014).

Under Illinois law, "[t]he construction of a contract is a question of law." *People ex rel. Dep't of Public Health v. Wiley*, 218 Ill.2d 207, 223 (Ill. 2006). If a contract is unambiguous, "the parties' intent must be derived . . . as a matter of law, solely from the writing itself." *Quake Constr., Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 288 (Ill. 1990). If, however, "the terms of an alleged contract are ambiguous or capable of more than one interpretation," then "parol evidence is admissible to ascertain the parties' intent." *Quake Constr.*, 141 Ill.2d at 288. "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill.2d 208, 233 (Ill. 2007). "If the words of a policy are clear and unambiguous, 'a court must afford them their *plain, ordinary and popular meaning*.'" *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 292-93 (Ill. 2001) (quoting *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 108 (Ill. 1992)).

This case involves a type of contract known as a surety bond. A surety:

> is one who becomes responsible for the debt or default of another. He binds himself for the payment of a sum of money, or for the performance of something else, for another who is already bound for such payment or performance. A

8

contract of surety involves a direct promise to perform the obligations of another person in the event such person fails to perform as required by his contract.

*Vee See Const. Co., Inc. v. Luckett*, 102 Ill.App.3d 444, 447 (Ill.App.Ct. 1982) (internal citations omitted); *see also City of Elgin v. Arch Ins. Co.*, 53 N.E.3d 31, 39 (Ill.App.Ct. 2016) ("A surety is a secondary obligor whose liability is collateral to that of the principal obligor.").

This case involves both a performance bond and a payment bond. "Performance bonds serve to ensure the contractor's performance of its obligations under the construction contract, while payment bonds assure that the contractor pays for materials and labor." *The United City of Yorkville v. Ocean Atlantic Service Corp.*, Case No. 11 CV 1984, 2013 WL 5433429 at *4 (N.D. Ill. Sept. 30, 2013). As the Seventh Circuit has explained:

> When a 'payment' bond is involved, the contractor typically promises the owner of the project to pay for all labor and materials, and the surety agrees to be liable with respect to that promise. The laborers and suppliers therefore have rights as third-party beneficiaries against the surety. In contrast, when a 'performance bond' is involved, there is no promise to pay laborers and suppliers of materials. The surety promises to be liable only for the fulfillment of the contractor's duty.

*City of Yorkville v. American Southern Ins. Co.*, 654 F.3d 713, 717 (7th Cir. 2011) (internal citations omitted).

Surety bonds are contracts and are interpreted as contracts. *Solai & Cameron, Inc. v. Plainfield Comm. Cons. School Dist. No. 202*, 374 Ill.App.3d 825, 836 (Ill.App.Ct. 2007) ("A performance bond is a contract, and contract principles apply in interpreting a performance bond."). Thus, as the Illinois Appellate Court has explained:

> A surety is not bound beyond the express terms of the performance bond and, when interpreting a performance bond, the court must look solely to the unambiguous language of the bond as evidence of the intentions of the parties.

*Solai*, 374 Ill.App.3d at 836 (quoting *Board of Local Improvements South Palos Township Sanitary Dist. ex. rel. North Side Tractor Sales Co. v. St. Paul Fire & Marine Ins.*, 39 Ill. App.3d

9

255, 257-58, 350 N.E.2d 36 (1976)); *see also Vee See Const.*, 102 Ill.App.3d at 447 ("The legal duties of a surety on its performance bond should not be expanded beyond the terms of the surety's promise, but a surety is not allowed to free itself from its contractual obligations.").

### A. Performance Bond

Defendant seeks summary judgment on plaintiff's claims for a declaratory judgment and for breach of contract on the Performance Bond.

Defendant argues that plaintiff failed to comply with the notice requirements under the Performance Bond, thereby robbing defendant of its contractual options for performance. Paragraph 3 of the Performance Bond states:

> 3. If there is no Construction Manager Default, the *Surety's obligation under this Bond shall arise after*:
>
> 3.1 The *Construction Manager has notified* the Subcontractor and *the Surety* at the address described in Paragraph 10 below *that the Construction Manager is considering declaring a Subcontractor Default and has requested and attempted to arrange a conference with the Subcontractor and Surety to be held not later than 10 days after receipt of such notice to discuss methods of performing the Subcontract. . . .; and*
>
> 3.2 *The Construction Manager has declared a Subcontractor Default* and formally terminated the Subcontractor's right to complete the Subcontract. Such Subcontractor Default shall be declared *earlier than fifteen days after the Subcontractor and the Surety have received notice* as provided in Subparagraph 3.1; *and*
>
> 3.3 *The Construction Manager has agreed to pay the Balance of the Subcontract Amount to the Surety* in accordance with the terms of the Subcontract or to a Contractor selected to perform the Subcontract in accordance with the terms of the contract with the Construction Manager.

(Performance Bond at 2/Docket 36-1 at 34) (emphasis added).

There are reasons why most surety contracts include such notice requirements. As the Fifth Circuit has explained:

10

> Before a declaration of default, sureties face possible tort liability for meddling in the affairs of their principals. After a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee. Given the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond. *Sureties deprived of this clear rule for notices of default would be reluctant to enter into otherwise profitable contracts.*

*L&A Contracting Co. v. Southern Concrete Services, Inc.*, 17 F.3d 106, 111 (5th Cir. 1994) (emphasis added). Similarly, the Illinois Appellate Court has explained:

> [Obligees] were required to provide seven days' written notice to [the surety]. An obvious reason for this was to allow [the surety] to exercise its rights under the performance bond to participate in the selection of a successor contractor. Since the [obligees] replaced [the subcontractor] with [a different subcontractor] before informing [the surety] that [the subcontractor] was to be terminated and without consulting [the surety] as to the successor, [the surety] was stripped of its contractual rights to minimize its liability under the performance bond by ensuring that the lowest responsible bidder was selected to complete the job.

*Dragon Constr., Inc. v. Parkway Bank & Trust*, 287 Ill.App.3d 29, 33 (Ill.App.Ct. 1997).

The importance of the notice is made obvious by Paragraph 4, which describes defendant's obligations "when" the obligee complies with Paragraph 3. Paragraph 4 states:

> 4. *When* the *Construction Manager has satisfied the conditions of Paragraph 3*, the *Surety shall promptly* and at the Surety's expense take one of the following actions:
>
>     4.1 *Arrange for the Subcontractor*, with consent of the Construction Manager, *to perform* and complete the Subcontract; or
>
>     4.2 *Undertake to perform* and complete *the Subcontract itself*, through its agents or through independent contractors; or
>
>     4.3 *Waive its right to perform* and complete, arrange for completion, or obtain a new contractor *and* with Reasonable promptness under the circumstances:
>
>         1. After investigation, determine the amount for which it is liable to the Construction Manager, and, as soon as practicable after the

11

> amount is determined, *tender payment* therefore to the Construction Manager; or
> 2. *Deny liability* in whole or in part and notify the Construction Manager citing reasons therefore.

(Performance Bond at 2/Docket 36-1 at 34). Thus, when an obligee has complied with the conditions precedent of Paragraph 3, defendant, as surety, has several options, including: (a) getting the subcontractor to perform; (b) performing itself; or (c) paying the costs to have someone else perform. Only if defendant fails to perform under Paragraph 4 (which requires plaintiff to perform under Paragraph 3), can an obligee sue to enforce the bond. (Performance Bond ¶ 5) ("If the Surety does not proceed as provided in paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond . . . and the Construction Manager shall be entitled to enforce any remedy available to the Construction Manager.").

The plain language of the Performance Bond convinces the Court that, as defendant argues, plaintiff was required to comply with the conditions of Paragraph 3 before defendant's duties under Paragraph 4 were triggered. *See Solai*, 374 Ill.App.3d at 836 & 840 ("Paragraph 3 of each performance bond unambiguously sets forth three specific requirements for [obligee] to satisfy before terminating [the] subcontractor from each project and triggering [the surety's] obligations under the performance bonds. . . . [The obligee] violated paragraph 3.3 of the performance bond . . . which negated [the surety's] options under paragraphs 4.1, 4.2, and 4.3 of the performance bond. This course of conduct violated the terms of the performance bond and nullified [the surety's] duty to perform."); *see also L&A*, 17 F.3d at 111; *C&I Entertainment, LLC v. Fidelity and Deposit Co. of Md.*, Case No. 08-cv-116, 2014 WL 3640790 at *4 (N.D. Miss. July 22, 2014) ("A performance bond is a contract and is subject to the general rules of contract interpretation. Failure to comply with conditions precedent in a contract renders the

contract unenforceable against the enforcing party.") (internal citations omitted); *Hunt Constr. Group, Inc. v. National Wrecking Corp.*, 542 F. Supp.2d 87, 96 (D.D.C. 2008) ("Where the obligee fails to notify a surety of an obligor's default in a timely fashion, so that the surety can exercise its options under the controlling performance bond, the obligee renders the bond null and void.").

Plaintiff argues that its situation is different, because it is an additional obligee, rather than a signatory to the Performance Bond. Plaintiff thinks its status as additional obligee exempts it from complying with the conditions precedent. The Court disagrees. As additional obligee, it was, in effect, a third-party beneficiary. *Centerre Trust Co. of St. Louis v. Continental Ins. Co.*, 167 Ill.App.3d 376, 378 (Ill.App.Ct. 1988) ("A dual obligee rider was also issued making [the additional obligee] a direct beneficiary of the performance bond."). A third-party beneficiary is not entitled to expand or enlarge a promisor's obligation under a contract. *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 258 (Ill. 1931) ("[T]he right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground alone that the situation or circumstances of the parties justify or demand further or other liability."). Rather, the "terms of the contract are controlling with respect to the rights of the third party beneficiary." *Midwest Concrete Products Co. v. LaSalle Nat. Bank*, 94 Ill.App.3d 394, 397 (Ill.App.Ct. 1981). Plaintiff, as additional obligee, cannot have it two ways; it cannot expect to take the benefits of the agreement without taking the obligations. *Cf. Hanover Ins. Co. v. R.W. Dunteman, Co.*, 51 F.4th 779, 787 (7th Cir. 2022) ("Our conclusion flows from a straightforward application of the policy language, but we note as well that accepting the insureds' argument

13

would undermine the purpose and ordinary operation of claims-made insurance. . . . [T]he insureds can't have it both ways by reaping the benefits of claims-made insurance without complying with their corresponding policy obligations.").

Accordingly, the Court agrees with courts that have concluded that additional obligees are subject to the terms—including the conditions precedent—of performance bonds. *See Enterprise Capital, Inc. v. The San-Gra Corp.*, 284 F. Supp.2d 166, 179 (D. Mass 2003) (surety entitled to summary judgment on additional obligee's claims under performance bond where additional obligee failed to meet conditions precedent, including by failing to declare subcontractor in default); *Travelers Cas. and Sur. Co. of Am. v. University Facilities, Inc.*, Case No. 10-cv-1682, 2011 WL 1558009 at *5 (E.D. La. April 25, 2011) ("Here, the parties do not dispute that UFI was made an additional obligee under the performance bonds. As a third-party beneficiary of the bonds, UFI was not required to sign the bonds or riders in order for the bonds and riders to be enforceable. UFI's rights under the bonds, however, are subject to the terms and conditions of the bonds.") (internal citations omitted).

Plaintiff argues that there are issues of fact as to whether it complied with the requirements of Paragraph 3. The Court disagrees. It is undisputed that the first notice defendant received about any problems with the project was on July 31, 2020, when plaintiff notified defendant that: 1) both JEI (the Construction Manager and original obligee) and MTS (the subcontractor and obligor) had defaulted; 2) MTS had "been removed" from the project; and 3) plaintiff was "forced to perform" the scope of work at a cost of greater than $4,000,000.00. Under Paragraph 3 of the Performance Bond, defendant was to be notified *before* a subcontractor default was declared and was supposed to have been at a conference to discuss a potential default. Only then could a default be declared, at which point the obligee was supposed to pay

14

the balance of the subcontract amount to defendant. Plaintiff has put forth no evidence—disputed or otherwise—that suggests it (or the original obligee) complied with any of the requirements of Paragraph 3.

In addition, defendant argues that it is entitled to summary judgment, because its obligation under the Performance Bond was never triggered, given JEI's default. As defendant points out, Paragraph 3 of the Performance Bond opens with, "*If* there is no Construction Manager Default, *the Surety's obligation under this Bond shall arise after*: . . ." (Performance Bond at 2/Docket 36-1 at 34). Under this plain language, defendant's obligations did not arise if the Construction Manager defaulted. *See Enterprise Capital*, 284 F. Supp.2d at 175. It is undisputed that JEI defaulted, so, as a matter of law, defendant's obligation under the Performance Bond did not arise. Defendant argues that if that term is held against it, then an additional-obligee rider has no purpose. The Court disagrees. The purpose of that rider was to make plaintiff a direct beneficiary so that it could enforce the bond. *See Centerre*, 167 Ill.App.3d at 378. The purpose was not, as this Court explained above, to give plaintiff rights beyond those set out in the Performance Bond or otherwise to expand the terms of the Performance Bond. Accordingly, even had plaintiff complied with the conditions precedent, the Construction Manager's default prevented defendant's obligations under the Performance Bond from being triggered.

Plaintiff has failed to put forth evidence from which a reasonable jury could reach a verdict in its favor on the Performance Bond. Defendant is entitled to judgment as a matter of law on Counts I and II with respect to the Performance Bond.

### B. Payment Bond

Defendant also seeks summary judgment on plaintiff's claims under the Payment Bond. Defendant argues that plaintiff is not a proper claimant under the Payment Bond, and the point is well taken.

A payment bond guarantees the obligor's obligation to pay for labor and materials, so laborers and suppliers have a right to enforce such a bond as third-party beneficiaries. *See City of Yorkville*, 654 F.3d at 717 (internal citations omitted) ("When a 'payment' bond is involved, the contractor typically promises the owner of the project to pay for all labor and materials, and the surety agrees to be liable with respect to that promise. The laborers and suppliers therefore have rights as third-party beneficiaries against the surety.").

The Payment Bond in this case is no different. Defendant agreed to pay laborers and suppliers if the subcontractor/obligor (MTS) failed to pay. (Payment Bond at ¶ 1/Docket 36-1 at 37) ("The Subcontractor and the Surety, jointly and severally, bind themselves . . . to the Construction Manager to pay for labor, materials and equipment furnished for use in the performance of the Subcontract[.]"). The Payment Bond goes on to set notice requirements for Claimants and defines a Claimant as:

> An individual or entity *supplying labor, materials or equipment* in the prosecution of the work provided for in the subcontract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Subcontract, architectural and engineering services required for performance of the work of the Subcontractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

(Payment Bond at ¶ 15/Docket 36-1 at 37-38).

Plaintiff has put forth no evidence that it supplied labor or supplies to MTS, the obligor. At best, plaintiff has put forth disputed evidence that it spent more than $4,000,000.00

16

complying with its obligations under its contract with HRE Crawford, LLC when plaintiff's subcontractor's (JEI's) subcontractor (MTS) failed to perform. The Payment Bond, though, is not a performance bond. "[P]ayment bonds benefit laborers and suppliers," *The United City of Yorkville*, 2013 WL 5433429 at *5, not obligees. *11A Couch on Insurance* § 165:15 ("[S]ince a labor and material bond is limited in coverage to the protection of laborers and materialmen, it, by definition, does not indemnify the obligee with respect to labor and materials purchased and used by the obligee in completing the contract after the contractor's default."). Plaintiff cites no cases suggesting an obligee is a proper claimant, so the argument is waived.

Plaintiff has not put forth evidence from which a reasonable jury could return a verdict in its favor on its claims under the Payment Bond. Defendant is entitled to judgment as a matter of law. Accordingly, the Court grants defendant summary judgment on Counts I and II with respect to the Payment Bond.

### IV. CONCLUSION

For all of these reasons, the Court grants defendant's motion [34] for summary judgment. Defendant is entitled to summary judgment on Counts I and II. Civil case terminated.

SO ORDERED.                                   ENTERED: December 12, 2022

 

_____
**JORGE L. ALONSO**
**United States District Judge**